IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lawrence M. Friedman,   Case No. 3:09CV2945

    Plaintiff

v.   ORDER

Intervet Inc., d/b/a,
    Intervet/Schering-Plough Animal Health,

    Defendant


This is a products liability suit by a pet owner who claims his pet died from veterinary insulin ("Vetsulin") manufactured by defendant, Intervet Inc. d/b/a Intervet/Schering-Plough Animal Health ("Intervet").

Plaintiff, Lawrence Friedman, asserts claims under the Ohio Product Liability Act ("OPLA"), O.R.C. §§ 2307.74, 2307.75 and New Jersey Product Liability Act (NJPLA). § 2A:58C-2.

Jurisdiction is proper under 28 U.S.C. § 1332(d). Pending is defendant's motion to dismiss [Doc. 24] all claims in the amended complaint [Doc. 20] under Fed. R. Civ. P. 12(b)(6).

Defendant seeks to dismiss the Ohio claims on the basis that the complaint fails to meet the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,

— U.S. —, 129 S. Ct. 1937 (2009). It seeks to dismiss the New Jersey claims because they are: 1) preempted by the Ohio claims; and 2) barred by a proper choice of law analysis.

For the reasons discussed below, defendant's motion shall be denied.

## Background

Until recently, defendant manufactured Vetsulin, a veterinary pharmaceutical used to treat diabetes in animals. Plaintiff purchased Vetsulin for the treatment of his pet's diabetes through his veterinarian "for several years." [Doc. 20, at. 5]. By the end of September, 2009, plaintiff's pet was ill. In December, 2009, plaintiff's pet died.

On November 3, 2009, the FDA released a warning concerning the safety of Vetsulin.

On November 6, 2009, defendant began sending letters to alert veterinarians of potential problems with Vetsulin and to advise them to transition diabetic animals to other medications.

On December 18, 2009, plaintiff filed a complaint against Intervet in the United States District Court for the Northern District of Ohio. [Doc. 1]. On March 1, 2010, plaintiff filed an amended complaint. [Doc. 20].

On April 1, 2010, defendant filed the pending motion to dismiss all claims.

## Standard of Review

A claim survives a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, *supra*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Twombly*, *supra*, 550 U.S. at 555-56

(internal citations omitted).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S.Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, *supra*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

### A. Motion to Dismiss Ohio Claims

To bring a claim under the Ohio Product Liability Act ("OPLA") plaintiff must establish that: "1) the product was defective; 2) the defect was a proximate cause of the plaintiff's harm; and 3) the manufacturer designed the actual product that caused the plaintiff's harm." *Utz v. Howmedica Osteonics Corp.*, 2009 WL 5409046, *8 (N.D. Ohio) (citing O.R.C. § 2307.73 (A)).

Defendant does not contest plaintiff's allegation that "[d]efendant manufactured a diabetic veterinary pharmaceutical known as Vetsulin." [Doc. 20, at 3]. Defendant objects, however, to the sufficiency of plaintiff's complaint with regard to the product defect and the causal connection between the defect and plaintiff's injuries.

#### 1. Manufacturing Defect: § 2307.74

#### a. Existence of a Defect: § 2307.73 (A)(1)

Section 2307.74 of the OPLA states that a product is defective in manufacture or

3

construction:

> if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

Defendant asserts that plaintiff's "allegations are simply recitations that Intervet and the Food and Drug Administration have released to the public regarding the manufacture of certain batches of the product, Vetsulin." [Doc 24, at 10].

Plaintiff alleges: 1) "Defendant distributed Vetsulin that contained varying amounts to [sic] crystalline zinc insulin in the formulation, causing the product to be out of specification." [Doc. 20, at 4]; 2) "The Vetsulin that was produced by [d]efendant and administered to [p]laintiff's pet deviated in a material way from the design specifications, formula, or performance standards of the [d]efendant." [Doc. 20, at 10]; 3) "[S]erials of Vetsulin had stability tests results that were above specification on an indicator of the amount of crystalline insulin in the formulation." *Id.*; and 4) "The Vetsulin . . . deviated in a material way from its design specifications, formula, or performance standards of the [d]efendant when it left [d]efendant's control." *Id.*

Publicly available information is not irrelevant or otherwise insufficient for evaluating a Rule 12(b)(6) motion under *Iqbal* and *Twombly*. *See*, *e.g.*, *Redinger v. Stryker Corp.*, 2010 WL 1995829, *3 (N.D. Ohio) (product's recall sufficed for claim to survive Rule 12(b)(6) motion). Matters of public record, if referenced in the complaint, may be taken into account in evaluating the merits of a Rule 12(b)(6) motion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F. 3d 426, 430 (6th Cir. 2008); *Taylor v. KeyCorp*, 678 F. Supp 633, 638 (N.D. Ohio 2009).

Defendant claims this case is like *Frey v. Novartis Pharmaceuticals Corporation*, 642 F.

Supp. 2d 787 (S.D. Ohio 2009). In *Frey*, plaintiff "failed to allege any facts that would permit the Court to conclude that a manufacturing defect occurred." *Id*. at 795.

Unlike *Frey*, in this case, plaintiff alleges specific problems with the product; namely, that test results showed the product was out of specification with regard to its primary compound, and that this was a deviation from the product's intended characteristics.

Reading the amended complaint in the light most favorable to plaintiff, the factual allegations suffice to state a cause of action under *Twombley* and *Iqbal*.

### b. Causal Connection Between Defect and Injury: § 2307.73 (A)(2)

To show the causal connection between the product defect and plaintiff's injuries, plaintiff must show "[a] defective aspect of the manufacturer's product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages." O.R.C. § 2307.73 (A)(2). *See Santana-Guillen v. Johnson & Johnson*, 2009 WL 1545791, *2 (N.D. Ohio).

Defendant asserts "the amended complaint fails to make specific allegations regarding the nature of the injury to plaintiff's pet and the causal relationship between Vetsulin and that injury." [Doc. 24, at 9].

Defendant again relies on *Frey*, stating that "[plaintiff's] conclusory allegations of how [the manufacturing] defect caused his alleged injuries are nothing more than a 'formulaic recitation' of the proximate cause requirement." [Doc. 24, at 11] (quoting *Frey*, *supra*, 642 F. Supp. 2d at 795).[1]

---

[1] Defendant also cites *Mohr v. Targeted Genetics, Inc.*, 2009 WL 4021153 (C.D. Ill). Dismissal in that case was due to the lack of allegations concerning the defendant's role in plaintiff's injuries. In this case defendant does not dispute that Intervet produces the product allegedly causing the injury. *Mohr*, therefore, is inapposite.

Plaintiff alleges a series of facts, including:

- "Defendant distributed Vetsulin that contained varying amounts to [sic] crystalline zinc insulin in the formulation, causing the product to be out of specification [Doc. 20, at 4];

- "The varying amounts of crystalline zinc insulin caused both a delay in insulin action and an overall longer duration of insulin activity." *Id*.;

- "Unstable insulin products result in unpredictable fluctuations in the glucose levels of diabetic patients." *Id*.;

- "These fluctuations in the glucose levels of a diabetic pet cause serious injury, including blindness or deafness, and death." *Id*.;
- "Plaintiff purchased Vetsulin for his pet through his veterinarian for several years." [Doc. 20, at 9];

- "This defect could and did cause a delay in the onset of insulin action, a delay in peak insulin activity, and an overall extension of the duration of the activity." [Doc 20, at 10];

- "By the end of September 2009, Plaintiff's pet was ill." [Doc 20, at 5];

- "[Plaintiff's] pet died in December of 2009." *Id*.; and

- "Plaintiff incurred significant veterinary bills in attempting to remedy the harm caused to his pet." [Doc 20, at 10].

Defendant's reliance on *Frey* is again misplaced. In *Frey*, plaintiff "failed to allege any facts that would permit the Court to conclude . . . that the defect was the proximate cause of [plaintiff's] alleged injuries." *Frey*, *supra*, 642 F. Supp. 2d at 795.

In this case, plaintiff described in detail Vetsulin's problems and has alleged that those problems caused the product to be "out of specification" [Doc. 20, at 4].

Plaintiff asserts that this product defect can "cause serious injury" to pets including death. [Doc 20, at 4]. Plaintiff used defendant's product for his pet and his pet died. [Doc. 20, at 5].

Taken together, these facts demonstrate "a claim to relief that is plausible on its face." *Iqbal*,

*supra*, — U.S. at —,129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 570). The facts alleged in this case suffice "to conclude that . . . the defect was the proximate cause of [plaintiff's] alleged injuries." *Frey*, *supra*, 642 F. Supp. 2d at 795.

Plaintiff is not required to make "specific allegations regarding the nature of the injury to plaintiff's pet and the causal connection between Vetsulin and that injury." [Doc. 24, at. 9]. Plaintiff is only required to plead "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, — U.S. at —,129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 556).

The pleading standard established in *Iqbal* and *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" but it "does not require 'detailed factual allegations.'" *Iqbal*, *supra*, 129 S. Ct. at 1949 (quoting *Twombly*, *supra*, 550 U.S. at 555). Plaintiff's allegations – detailing the product's problem, the consequences of that problem, that plaintiff used the product, and that those consequences occurred – are more than sufficient to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, *supra*, 550 U.S. at 570.

Defendant complains that plaintiff's factual assertions come from FDA statements. So? What matters is that plaintiff has asserted *facts*, not conclusions or theories. Nothing in *Twombley* or *Iqbal* casts a shadow over the sources of factual allegations. Indeed, facts derived from an authoritative governmental source and formally published by that source as part would appear to be a solid, hefty basis on which to rest a complaint.

Plaintiff has sufficiently plead factual allegations to support a plausible claim under § 2307.74 of the OPLA. Defendant's motion to dismiss this claim is therefore denied.

**2. Design Defect: § 2307.75**

**a. Existence of Defect: § 2307.73 (A)(1)**

In relation to a defect in design or formulation, § 2307.75(A) states:

Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section.

Defendant asserts that "[t]he amended complaint contains no non-conclusory allegations of a defect in the design of [Vetsulin]." [Doc 24, at 10].

Plaintiff alleges:

- "At the time it left [d]efendant's control, the foreseeable risks associated with Vetsulin . . . exceeded the benefits associated with the design." [Doc. 20, at 10];

- "Defendant's design of Vetsulin was such that it produced a product that was inconsistent, unpredictable, and unreliable." *Id*.;

- The FDA released a warning about Vetsulin [Doc. 20, at 4];

- "Defendant subsequently announced that it would discontinue the production of Vetsulin" [Doc. 20, at 5];

- "Defendant . . . instructed consumers to use an alternative insulin product for their pets." [Doc. 20, at 11].

The Northern District's decision in *Redinger v. Stryker Corporation*, 2010 WL 1995829, *3 (N.D. Ohio)*, is directly on point. In *Redinger*, *supra*, plaintiff's claim brought under O.R.C. § 2307.75 survived defendant's Rule 12(b)(6) motion due to the fact that the product had been recalled.

Similarly, in this case, the fact that the FDA released a warning about Vetsulin and defendant subsequently announced it would discontinue Vetsulin production "is enough at this stage to give rise to a plausible inference that the foreseeable risks associated with the design or formulation of

8

the [product] outweighed its benefits." *Id.*

Reading the amended complaint in the light most favorable to plaintiff, the factual allegations suffice to conclude that Vetsulin was defective in design.

### b. Causal Connection Between Defect and Injury: § 2307.73 (A)(2)

The same showing of causation is required for the design defect claim as is required for the manufacturing defect claim. *See* O.R.C. § 2307.73 (A). Plaintiff must show "[a] defective aspect of the manufacturer's product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages." O.R.C. § 2307.73 (A)(2). *See Santana-Guillen*, *supra*, 2009 WL 1545791, *2 (N.D. Ohio).

Defendant asserts that the amended complaint does not contain "any specific allegations of proximate cause with respect to [the design] defect[]," and that it "fails to explain how the alleged defects caused injury to plaintiff's pet." [Doc. 24, at 10].

Plaintiff alleges:

- "Properly administered, the defectively designed Vetsulin caused blindness, deafness and death in pets." [Doc. 20, at 11];

- "The risk of the defectively designed Vetsulin causing harm to pets . . . was both foresseable and highly probable." *Id.*;

- Plaintiff used defendant's product for his pet and his pet died [Doc. 20, at 5]; and

- "Plaintiff incurred significant veterinary bills in attempting to remedy the harm caused to his pet." [Doc 20, at 12].

Taken as true, plaintiff's allegations – that the product was defectively designed, the defect can result in certain consequences, plaintiff used the product, and those consequences occurred – demonstrate a facially plausible causal connection between defendant's product and plaintiff's

9

injury. This connection "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, — U.S. at —,129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 556).

Plaintiff has sufficiently plead factual allegations to support a plausible claim under § 2307.75 of the OPLA. Defendant's motion to dismiss this claim is therefore denied.

### B. New Jersey Product Liability Act Claims

Plaintiff alleges violations of N.J. Stat. Ann. § 2A:58C-2, claiming defendant's product deviated from design specifications and was designed in a defective manner.

Defendant contends: 1) the Ohio Product Liability Act preempts plaintiff's New Jersey Product Liability Act claims; and 2) under Ohio choice of law rules I must apply Ohio law. Defendant also argues in its reply in support of its motion to dismiss the complaint (Doc. 33), that plaintiff lacks standing to bring the NJPLA claim.

### 1. OPLA Does Not Preempt NJPLA

Section 2307.71(B) of the OPLA expressly states, "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." O.R.C. § 2307.71(B). The OPLA defines a "product liability claim" as:

> a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
> (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> (b) Any warning or instruction, or lack of warning or instruction, associated with that product;

>           (c) Any failure of that product to conform to any relevant
>           representation or warranty.

O.R.C. § 2307.71(A)(13).

Defendant argues that because § 2307.71(B) "abrogate[s] all common law product liability claims or causes of action," then it must preempt the NJPLA and I must dismiss that claim.

This argument is not well taken. To be sure, the OPLA preempts all claim that might arise under Ohio common law and statutes. *See, e.g., Tompkin v. Am. Brands,* 219 F.3d 566, 575 (6th Cir. 2000) (holding common law claim of negligent manufacture preempted by OPLA); *Bouchard v. Amer. Home Prods. Corp.*, 2002 WL 32597992, at *12 (N.D. Oh.) (holding that OPLA preempts claim asserted under the Ohio Consumer Sales Practices Act). But that is beside the point: defendant has produced no basis for concluding that § 2307.71(B) preempts product liability claims brought under a statute of another state. I find, therefore, that plaintiff's NJPLA claim is not preempted by his OPLA claim.

### 2. Standing for the NJPLA

In its reply brief defendant argues that plaintiff is without standing to seek relief under the NJPLA because plaintiff does not live in New Jersey and has not suffered an injury in that state.

To bring suit, a plaintiff must have standing – in this instance *via* the doctrine of prudential standing – as required by Article III of the United States Constitution. *Monroe Retail, Inc. v. RBS Citizens, N.A.,* 589 F.3d 274, 278 (6th Cir. 2009).

"[To] satisfy Article III's standing requirements, a plaintiff must show" 1) "it has suffered an 'injury in fact' that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical"; 2) "the injury is fairly traceable to the challenged action of the defendant"; and 3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To satisfy the prudential requirement, plaintiff must: 1) "assert [his] own legal rights and interests"; (2) pursue claims that constitute more than a "generalized grievance"; and (3) in statutory cases, raise a claim within the "zone of interests" protected by the statute in question. *Monroe Retail, supra*, 589 F.3d at 278.

Ordinarily, standing is a threshold issue for any case, including class actions. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("plaintiff . . . must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."). The requirement of standing is no different in the class action context than in other situations. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.")

Defendant argues plaintiff falls out of the "zone of interests" of the NJPLA because he does not live in New Jersey and did not suffer any injury in New Jersey.

Whether a claim falls within the "zone of interests" depends on whether the plaintiff's rights are among those contemplated and covered by the statute. *Club Italia Soccer & Sports Org, Inc. v. Charter Twp of Shelby, Mich.* 470 F.3d 286, 291 (6th Cir. 2006).

The NJPLA defines a "claimant" as "any person who brings a product liability action." N.J. Stat. Ann. § 2A-58C-1. The statute does not restrict claimants only to New Jersey residents or those who have suffered an injury in New Jersey.

Plaintiff falls within the "zone of interest" of the NJPLA and has standing to bring claims under the statute.

### 3. Choice of Law in Putative Class Action

Jurisdiction in this case is premised on diversity of citizenship under 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law, including choice of law rules, of the state in which it sits. *E.g., Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 (1941). I thus look to Ohio's choice of law rules to determine which state's law governs. Likewise, due process requirements apply to nationwide class action lawsuits, requiring courts to engage in individualized choice of law analysis for each plaintiff's claims and not just named plaintiffs. *O'Bryan v. Holy See*, 556 F.3d 361, 381 n.8 (6th Cir. 2009)

"[T]he individualized choice of law analysis is only necessary once the class seeks certification. While the class remains a putative class, courts focus on the application of the forum's choice of law rules to the named plaintiffs." *Id.*[2]

Under Ohio law, a presumption is created that the law of the place of the injury controls. *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342 (1984). The presumption is held "unless another jurisdiction has a more significant relationship to the lawsuit. *Id.*

To determine the state with the most significant relationship, I look at five factors: 1) "the place of the injury;" 2) "the place where the conduct causing the injury occurred;" 3) "the domicile, residence, nationality, place of incorporation, and place of business of the parties;" 4) "the place

---

[2] It is important to note that at this point in the litigation, I have not certified the plaintiff as a class representative. Accordingly, I will not make a choice of law determination that will bind the putative class in this Order. This Order only contemplates the claims of the named plaintiff.

where the relationship between the parties, if any, is located;" and 5) "any factors under Section 6 [of the Restatement]³ which the court may deem relevant to the litigation." *Id.* "All of these factors are to be evaluated according to their relative importance to the case." *Id.*

Because the injury took place in Ohio, I must presume that Ohio law applies unless any other jurisdiction has more significant contacts. *Bertram v. Norden* 159 Ohio App. 3d 171, 176-77 (2004).

The plaintiff claims that New Jersey law should apply as well because there may be a potential class member in New Jersey and the defendant's principal place of business is in New Jersey. Defendant argues that Ohio law should apply because the injury occurred in Ohio and New Jersey does not have the necessary significant relationship for its law to apply.

For guidance in the instant case, I turn to the facts and outcome of *Morgan*, *supra*. In *Morgan*, the defendant, an Ohio corporation, sold a meat grinder with a protective guard in 1959 to a Tennessee corporation. 15 Ohio St.3d at 339. Subsequently, the Tennessee corporation resold the meat grinder, without the original protective guard, to a supermarket owner in Kentucky. *Id.* In 1979, plaintiff, a supermarket employee, injured his hand when it slipped into the grinder.

Plaintiff sued the defendant in Ohio, alleging products liability. *Id.* The Ohio Supreme Court, reviewing whether Kentucky or Ohio law should apply, determined, using the factors outlined that Kentucky law should apply:

---

³ Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of law to be applied."

14

>	Turning to the facts of this case, it is clear that the state of Kentucky has the most significant relationship to the parties and events herein. The courts below found that appellant's injury took place in Kentucky and that he was a resident thereof at the time of his accident. Further, appellant Morgan was employed at a supermarket in Kentucky and received workers' compensation benefits under Kentucky law. Finally, the inspection of the meat grinder's condition was the responsibility and within the exclusive interest of the state of Kentucky.
>
>	The state of Ohio has only two contacts of any significance to this litigation. First, appellee is incorporated under the laws of this state. Second, the product was manufactured in Ohio. It is without question that our state has an important policy objective in deterring the manufacture and sale of defective products. However, the mere fact that twenty-five years ago appellee manufactured a commercial meat grinder in Ohio and subsequently sold it to a Tennessee corporation with a protective guard in place which, in turn, was removed and a Kentucky resident was injured thereby, does not justify an application of Ohio law.

*Id.* at 342-343.

The facts in the instant case – plaintiff resides and bought the product in Ohio; the injury occurred here – are similar to those in *Morgan*. The only point of contact at this point with New Jersey is that that is defendant's principal place of business. Applying Ohio law to plaintiff's claim is appropriate.

**Conclusion**

For the foregoing reasons, it is hereby :

ORDERED THAT: defendant's motion to dismiss [Doc. 24] be, and the same hereby is denied.

So ordered.

>	s/James G. Carr
>	United States District Judge