IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lawrence M. Friedman,                                    Case No. 3:09CV2945

               Plaintiff

    v.                                                                  ORDER

Intervet Inc. d/b/a,
        Intervet/Schering-Plough Animal Health,

               Defendant


      This is a products liability suit by a pet owner, Lawrence Friedman, who claims his pet died from proprietary veterinary insulin (Vetsulin) manufactured by defendant Intervet Inc. d/b/a Intervet/Schering-Plough Animal Health (Intervet).

      Jurisdiction is proper under 28 U.S.C. § 1332.

      Pending is plaintiff's motion for an Order: 1) preventing defendant from providing "misleading communications" to prospective class members; and 2) rescinding all settlement agreements obtained thus far with prospective class members. [Doc. 6].

      For the reasons discussed below, plaintiff's motion shall be granted in part and denied in part, without prejudice.

**Background**

Defendant manufactures Vetsulin, a proprietary form of veterinary insulin.

When defendant would receive customer complaints relating to Vetsulin, defendant would launch an investigation into the complaint. After completion of the investigation, defendant would typically send the complainant a letter offering compensation in exchange for a signed release "in full and final settlement of [the] matter." [Docs. 6-2, at 2; 6-3, at 2; 25-1, at 3].

Defendant's letter to the complainant typically states, in relevant part: "We are sending you $[XXX] in full and final settlement of this matter. We ask that you kindly sign the enclosed release and return it to me  .   .   .  . Once we have received your signed release, a check will be mailed to you." [Docs. 6-2, at 2; 6-3, at 2]. Defendant does not dispute that this letter is typical of the letters it sent complainants.

The release defendant requires the complainants to sign in exchange for compensation, meanwhile, typically states, in relevant part: "In order to avoid the expense of litigation, Owner and [defendant] wish to compromise and release all claims arising from or related to the Claim[,]" and other similar language. [Docs. 6-2, at 3; 6-3, at 3]. Defendant does not dispute that this release is typical of the releases it sent complainants.

Defendant further does not dispute that neither the releases nor the settlement agreements mentioned the putative class action pending before me. Indeed, defendant asserts: "Nor was [defendant] required to inform  .   .   .  complainants  .   .   .  of this litigation following its filing. In fact, it would be highly irregular for [defendant] to use its customer relations apparatus to provide notice of an uncertified class action suit to individuals who contact the company regarding potential problems with  .   .   .  [Vetsulin]." [Doc. 25, at 6-7].

Between December 7, 2009, and March 29, 2010, defendant received 121 Vetsulin releases in response to sending out 164 letters to complainants.[1] Defendant sent twenty-one of the 164 letters before plaintiff filed this suit.

On December 18, 2009, plaintiff filed this class action lawsuit.

### Discussion

The thrust of plaintiff's motion is a concern that defendant's actions are undermining the rights of putative class members. Defendant disagrees and urges me to stay my hand.

Rule 23 of the Federal Rules of Civil Procedure governs class actions. It provides, in relevant part:

> In conducting an action under this rule [i.e., a class action], the court may issue orders that:  .   .   . (B) require–to protect class members and fairly conduct the action–giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (C) impose conditions on the representative parties or on intervenors; (D) require that the

---

[1] While defendant's employee and brief state that defendant sent 161 of these letters, review of defendant's employee's spreadsheet reveals that the correct number is 164. [Doc. 25-2, at 2-6]. Also, while defendant may have received only 121 releases by March 29, 2010, another twenty-nine releases were "pending" at that time. [*Id.*, at 2]. Including those releases would bring the total releases obtained to 150.

The total compensation paid for the 121 releases was $89,534.93. The additional twenty-nine releases, if returned, result in payment of another $15,568.42. Finally, fourteen cases are classified as "releases not needed," meriting payment of $4,355.32. It is unclear what differentiates these complaints.

Assuming the twenty-nine remaining complainants return their releases, defendant will have paid $109,458.67 for resolution of 164 Vetsulin complaints (as of March 29, 2010).

Plaintiff submits evidence – and defendant does not contest – that the compensation complainants received was for the amount of the Vetsulin either purchased or returned. [Docs. 6-2, at 1 ("[Defendant] contacted me requesting that I provide a release of any claims which I might have for purchasing the Vetsulin which I still had for approximately what I paid for it[.]"); 6-3, at 1 ("[Defendant's] representative requested I return signed release in order to get my refund for ret'd [returned] products.")].

pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or (E) deal with similar procedural matters.

Fed. R. Civ. P. 23(d)(1).

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981), the Supreme Court held that a district court may, under Rule 23, impose limitations on communications between parties and members of a class or putative class.[2] The Court found that the district court abused its discretion in issuing "an order requiring prior judicial approval of all communications [between the parties and prospective class members], with the exception of cases where [the class representatives] chose to assert a constitutional right." *Id.* at 103. The Court noted: "[O]ne looks in vain for any indication of a careful weighing of competing factors. Indeed, in this respect, the District Court failed to provide any record useful for appellate review. The court made neither factual findings nor legal arguments supporting the need for this sweeping restraint order." *Id.* at 102.

In *Gulf Oil*, the Court articulated the broad guidelines by which a district court should determine whether limitations on such communications are appropriate: "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference

---

[2] While the facts of *Gulf Oil* dealt with limiting communications between *plaintiff's counsel* and prospective class members, courts have applied its rationale to communications between *defendant* or *defense counsel* and prospective class members, as is at issue here. *See, e.g.*, *Great Rivers Coop. v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995); *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988); *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1201-03 (11th Cir. 1985); *Bublitz v. E.I. DuPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 675 n.1 (N.D. Ga. 1999).

Moreover, the Court's holding in *Gulf Oil* – and a district court's ability to limit such communications – applies even before the court has certified a class, as here. *See, e.g.*, *Rubery v. Buth-Na-Bodhaige, Inc.*, 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007); *Bublitz, supra*, 196 F.R.D. at 547; *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997); *Ralph Oldsmobile Inc. v. Gen. Motors Corp.*, 2001 WL 1035132, *6 (S.D.N.Y.).

with the rights of the parties." *Id.* at 101-02. The Court emphasized that a court must draw such limitations carefully to avoid impinging on putative class members' constitutional rights of speech, association and access to counsel. *Id.* at 102.

Construing *Gulf Oil*, the Sixth Circuit warned of the potential abuses resulting from attorney communications with class members or putative class members: "(1) the susceptibility of nonparty class members to solicitation amounting to barratry, (2) the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding, and (3) unapproved communication to class members that misrepresent the status or effect of the pending action." *Williams v. U.S. Dist. Court*, 658 F.2d 430, 436 (6th Cir. 1981) (citing *Gulf Oil*, *supra*, 452 U.S. at 101).

Interpreting *Gulf Oil*, the Eleventh Circuit has articulated the widely cited standard for when such limitations do *not* run afoul of the First Amendment: "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a heightened sensitivity for first amendment concerns." *Kleiner*, *supra*, 751 F.2d at 1205 (internal citation and quotation omitted); *see also Murton v. Measurecomp, LLC*, 2008 WL 5725628, *4 (N.D. Ohio) ("Commercial speech enjoys a lesser degree of protection than other constitutionally guaranteed expression, and courts have been particularly willing to restrict commercial speech (such as communications to potential class participants) where it is or has the potential to be misleading or coercive." (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980))).

Courts generally examine four criteria in determining if "good cause" exists: "[1] the severity and likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the

5

availability of a less onerous alternative; [4] and the duration of the order." *Kleiner*, *supra*, 751 F.2d at 1206 (internal citation omitted).

### A. Providing Notice of Pending Class Action Lawsuit

Plaintiff argues that I should order defendant "to inform any prospective class members that defendant contacts that this lawsuit has been filed, and to provide them the contact information for plaintiff's counsel." [Doc. 6, at 7]. He does so largely based on the concern that putative class members may unknowingly forfeit their rights under this action.

Defendant responds that plaintiff's requested order is inappropriate. It points to several factors that it believes militate against my issuance of such an order: 1) plaintiff has not shown that defendant's communications were coercive, misleading or abusive; 2) defendant only procured releases from customers who initiated contact by filing complaints; 3) defendant does not have an ongoing business relationship with its customers; 4) defendant's settlement offers are comparable to damages putative class members would receive through this class action; and 5) plaintiff's class action is not yet certified and unlikely to be certified.

I first address defendant's fourth point, regarding damages. Defendant contends that its settlement offers are comparable to the possible recovery in this case. I decline to credit defendant's argument on this point. As plaintiff points out, his allegations seek damages for "pets hav[ing] been left blind or deaf and  .   .   .  sometimes perished, damages [that are thus] far different from defendant's offer to repurchase the unused Vetsulin," [Doc. 6, at 6] or to compensate for the Vetsulin purchased, or other similar amounts. Defendant's references to scattered, and partially inapposite, Ohio law are inadequate to convince me otherwise. I further find this factor insignificant in deciding this motion.

6

As regards defendant's claim that plaintiff has not shown defendant's communications were coercive, misleading or abusive, defendant is incorrect. A defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be "misleading." *See, e.g.*, *Westerfield v. Quizno's Franchise Co.*, 2007 WL 1062200, *3 (E.D. Wis.); *Ralph Oldsmobile*, *supra*, 2001 WL 1035132, *5; *Jenifer v. Del. Solid Waste Auth.*, 1999 WL 117762, *7 (D. Del.); *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528, 532 (N.Y. Sup. Ct. 1999); *see also Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003) ("The failure to recognize the existence of a putative class action [in securing releases from putative class members], however, could be abusive only if the class action sought recovery in excess of that proposed by the defendant[.]").

In *Westerfield*, for example, plaintiff's counsel – for Quizno's franchisees in Wisconsin – sought to require defendants Quizno's and affiliates to alert franchisees of the pending litigation before securing releases. 2007 WL 1062200, *1. In assessing the motion, the court reasoned:

> [T]here exists a potential for unknowing waivers *resulting from a lack of information* in the transfer agreement and CLG leasing letter, *and a lack of clarity* in the CLG leasing letter. *Neither the transfer agreement nor the CLG leasing letter mentions the instant action.* Nor does the record reflect any mention of this action in any other communications made to date by Quiznos. *A risk exists, then, that franchisees might sign the releases without knowing the implications vis-a-vis rights they might assert in the instant action.*

*Id.*, *3 (emphasis added).[3]

The court then held:

---

[3] Defendant attempts to point to the franchisor-franchisee relationship present in *Westerfield* as distinguishing that case from the pending litigation. As examination of the opinion reveals, however, the court in *Westerfield* did not rely on that relationship in requiring disclosure of the pending class action to putative class members from whom Quizno's and affiliates sought releases. 2007 WL 1062200, *3.

7

> [G]iven the danger that franchisees asked to sign releases submitted by Quiznos and/or CLG may inadvertently relinquish whatever rights they may have in this action, Quiznos and its affiliates will be directed to provide notice of this lawsuit to any of its Wisconsin franchisees from whom it seeks a release of claims while this action is pending.

*Id.*

As in *Westerfield* and the other cases cited above, defendant has procured settlements and releases without informing putative class members of what they are possibly giving up: participation in the pending putative class action. I find defendant's failure to provide such notice to putative class members before securing settlements or releases misleading, and supported by a "clear record"[4] of such failure. *Gulf Oil*, *supra*, 452 U.S. at 101-02.[5]

Defendant's second and third points – that it did not initiate contact and does not have an ongoing business relationship with the putative class members – both militate against restrictions on defendant's communications with putative class members; but neither factor is particularly

---

[4] This "clear record" is shown by the facts and background laid out above, including two sample complainant affidavits, letters and releases, an affidavit from defendant's employee, and defendant's failure to contest that it did not inform complainants of this putative class action before securing settlements or releases from them. [Docs. 6; 6-2; 6-3; 25; 25-1].

[5] As one poet notes, and despite defendant's protestations to the contrary, an act of *omission* may be just as culpable as one of *commission*:

> It is common knowledge to every schoolboy and even every Bachelor of Arts,
> That all sin is divided into two parts.
> One kind of sin is called a sin of commission, and that is very important,
> And it is what you are doing when you are doing something you ortant,
> And the other kind of sin is just the opposite and is called a sin of omission
> and is equally bad in the eyes of all right-thinking people, from
> Billy Sunday to Buddha,
> And it consists of not having done something you shuddha.

Ogden Nash, *Portrait of the Artist as a Prematurely Old Man*, *in* THE FAMILY ALBUM OF FAVORITE POEMS (P. Edward Ernest ed., 1959).

significant vis-a-vis the type of limitation – notice of the pending action – that plaintiff seeks imposed on defendant's communications.[6] It is worth noting, moreover, that those individuals who were so upset as to complain to defendant are probably the same group most likely to participate in a class action. In this regard, defendant's "magnanimity" might be better viewed as strategy.

That leaves what I see to be the most significant factor poised against requiring defendant to provide notice of the pending lawsuit: the unlikelihood of class certification.[7]

On one hand, and albeit in a different context, the Eleventh Circuit has stated:

> [T]he district court's order allowing the plaintiffs to communicate with potential class members [across the country and via a website and 1 (800) number] was an abuse of discretion. The communications order was entered months prior to any decision regarding whether either of the two proposed classes would in fact be certified. *While we cannot say that orders authorizing communication with potential class members may never precede class certification, district courts must strive to avoid authorizing injurious class communications that might later prove unnecessary. . . . In such circumstances, the danger of abuse that always attends class communications [is that] plaintiffs might use widespread publication of their claims, disguised as class communications, to coerce defendants into settlement*[.]

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (emphasis added).

The court in *Jackson*, however, addressed the exact opposite of the situation I face here, where the issue is not whether to *permit* communications, but whether to *require* them. Nevertheless,

---

[6] The lack of an ongoing business relationship – particularly that of employer-employee or a similarly skewed power balance – is often relevant to determining whether a defendant's communications are *coercive. See, e.g.*, *Bublitz*, *supra*, 196 F.R.D. at 548.

As I have found defendant's communications to putative class members *misleading*, the absence of coercion here is a factor suggesting only that greater limitations on defendant-putative class member communications are unnecessary. It speaks minimally to whether requiring defendant to provide notice of the instant class action is appropriate.

[7] I do not here prejudge my ruling on class certification, especially because the parties have yet to brief the issue in full. I only point to general problems with pharmaceutical class actions that frequently prevent their certification.

I find well taken the Eleventh Circuit's point that I should exercise restraint in acting prior to class certification.

This is especially so where the general likelihood of certification of a pharmaceutical class action is low:

> Whether class certification has been denied on the basis of lack of commonality, typicality, or predominance and superiority, most courts have exhibited great reluctance to certify a class in actions involving a number of defendants and exposure to the product in question over an extended period of time. Usually, these courts have concluded that the individualized nature of the proof as to liability, individual questions as to affirmative defense, and the absence of a single even causing the injury result in such a multiplicity of issues as to make class action treatment inappropriate or unworkable.

*In re Tetracycline Cases*, 107 F.R.D. 719, 724 (W.D. Mo. 1985).

The Sixth Circuit has agreed:

> [I]n medical device products liability litigation of the sort involved here the factual and legal issues often *do* differ dramatically from individual to individual because there is no common cause of injury.  .  .  . [Moreover], even assuming common questions of law or fact, it cannot be said that these issues predominate, and that class treatment would be superior to other methods of litigation. In fact, a number of other courts have denied class certifications in drug or medical product liability actions for these reasons.

*In re Am. Med. Sys.*, 75 F.3d 1069, 1084-85 (6th Cir. 1996).

Denying certification of a putative products liability class action regarding harm to pets, the Southern District of California echoed similar concerns: While "there will be common issues of design, testing, manufacturing, and labeling[,]  .  .  . the individual case histories of the pets of each class member will involve different negligence, strict products liability, breach of warranty, fraud, and adequacy of warning issues." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Moreover,

> each animal will have been injured in different ways and to different degrees by [the product]. Each pet owner, for purposes of emotional distress claims, will have been affected in different ways and to different degrees by the loss of their pets. It would be necessary to decide whether [the product] proximately caused such harm in each individual case.

*Id.* at 263.

As these cases suggest, there is thus a sizeable concern that any communications limitation I order would be unnecessary in light of the steep hill plaintiff must climb to establish certification of his class. In effect, the argument is that I need not protect the prospective rights of putative class members because their class will never materialize.

Defendant's argument, however, misses the fact that I must balance this concern for unnecessary limitations on defendant's communications against the purposes of Rule 23 and class actions: "[T]he effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class." *Burrell*, *supra*, 176 F.R.D. at 243 (citing *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994)).

This is because "[u]nlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23, by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation." *Id.*; *see also Abdullah*, *supra*, 186 F.R.D. at 678 ("Regardless of whether these [potentially coercive] communications occur before or after class certification, the effect is still the same[.]").

Following such reasoning, numerous cases have approved of court limitations on communications prior to class certification. *E.g.*, *Bublitz*, *supra*, 196 F.R.D. at 547-49; *Abdullah*,

11

*supra*, 186 F.R.D. at 678-79; *Hampton Hardware*, *supra*, 156 F.R.D. at 632-33; *Jenifer*, *supra*, 1999 WL 117762, *7-8.

Here, notwithstanding defendant's arguments – most saliently the idea that a district court should act sparingly prior to certification – I find that defendant's failure to notify putative class members of this litigation before obtaining settlements and releases from them is based on a "clear record," see Part A n.4, *supra*, and constituted a misleading communication meriting action on my part. *Gulf Oil*, *supra*, 452 U.S. at 101-02; *Williams*, *supra*, 658 F.2d at 436.

Having considered the factors militating for and against imposing limitations on defendant's communications, I find that plaintiff has met his burden and the policies favoring some form of notice win the day. This is because the purposes of Rule 23 and encouraging efficient and proper class action management so require. *Gulf Oil*, *supra*, 452 U.S. at 101-02; *Williams*, *supra*, 658 F.2d at 436. In particular, here I am concerned with defendant "misrepresent[ing] the status or effect of the pending action." *Williams*, *supra*, 658 F.2d at 436.

I have weighed these factors and the competing desires of preventing defendant from issuing misleading communications, and minimizing interfering with defendant's communications with Vetsulin consumers. *Gulf Oil*, *supra*, 452 U.S. at 101-02. Having done so, I find defendant's misleading, but neither coercive nor abusive, behavior merits only the relatively minor limitation on its rights detailed below.

While I acknowledge that any imposition on defendant's rights is noteworthy, especially prior to class certification, requiring provision of notice pales in comparison to filtering all communication through a district court or a total prohibition on communication as in *Gulf Oil*. *E.g.*, *Westerfield*, *supra*, 2007 WL 1062200, *3 ("Balancing the findings supported by the record against

12

the need to limit Quiznos' speech as little as possible in the circumstances, the appropriate remedy is to require that notice be given. The remedy proposed by plaintiffs, however, is too broad." (internal citation omitted)). My Order only limits slightly the contours of any settlement discussions regarding Vetsulin in which defendant chooses to engage.

I find that this requirement is the minimum necessary to protect the rights of putative class members while avoiding limiting defendant's statutory or constitutional rights, *Gulf Oil*, *supra*, 452 U.S. at 102, and I issue it "with a heightened sensitivity for first amendment concerns." *Kleiner*, *supra*, 751 F.2d at 1205. Good cause exists for this requirement, as putative class members may waive their rights under this action unknowingly, a severe and likely harm absent my intervention. *Id.* at 1205-06. My Order, moreover, is drawn as narrowly and least imposingly as possible. *Id.* at 1206. Finally, the Order is to last only as long as is required for protection of the putative class members' rights in this regard. *Id.*

Having thus "weigh[ed] the need for a limitation and the potential interference with the rights of the parties," *Gulf Oil*, *supra*, 452 U.S. at 101-02, I therefore conclude that defendant must:

> 1) Notify those individuals from whom it has already procured Vetsulin settlement agreements/releases since the filing of this lawsuit – December 18, 2009 – that: a) this putative class action is currently pending by a Vetsulin customer whose pet has suffered injuries or death from said product; and b) the individuals may wish to consult with an attorney regarding their settlement agreement/release; and
>
> 2) Notify any individual from whom it seeks a Vetsulin settlement agreement/release after issuance of this Order that: a) this putative class action is currently pending by a Vetsulin customer whose pet has suffered injuries or death from said product; b) signing the settlement agreement/release will prevent the individual from later joining this action if the class is certified; c) if no class is certified, defendant will so inform the customer, who will have thirty days in which to accept or reject defendant's settlement offer; and d) the individual may wish to consult with an attorney before signing the settlement agreement/release.

13

Any such notice shall include the names and contact information of plaintiff's counsel for this suit.

## B. Rescinding Settlement Agreements/Releases Obtained

Plaintiff further requests that I rescind any settlement agreements – or void releases – that defendant has obtained from prospective class members. Defendant responds that such court action is unwarranted, or at least premature prior to class certification.

I agree with defendant that such an order is premature. Defendant's settlement discussions with putative class members – including obtaining releases – are not so inherently inappropriate as to require such a drastic remedy. *Ralph Oldsmobile*, *supra*, 2001 WL 1035132, *7; *see also Bublitz*, *supra*, 196 F.R.D. at 548 ("Defendants ordinarily are not precluded from communications with putative class members, including discussion of settlement offers with individual class members before certification[.]" (quoting Manual for Complex Litigation, Third § 30.24)).

The court in *Ralph Oldsmobile* "decline[d] at this time to void the releases that have already been executed." 2001 WL 1035132, *7. It did so for three reasons that I find persuasive: 1) the putative class members who signed the releases did not ask the court to void them; 2) there was inadequate evidence in the record of the release-signers' knowledge regarding the pending class action; and 3) even if the release-signers knew nothing of the pending litigation at the time they executed the releases, there was no evidence that they would not still sign the releases. *Id.*

The court then concluded that "the appropriate solution is to include in the notice to potential class members a statement to the effect that the Court will consider an application to void a release made by any dealer who signed such a release prior to receiving the notice." *Id.*

14

As in *Ralph Oldsmobile*, the putative class members here have not individually requested that I void their releases, and doing so *en masse* would not be appropriate given the individualized nature of the inquiry. The requirement that I stay my hand at this juncture is even more compelling in light of the difficult path plaintiff must tread for class certification of a pharmaceutical case. *See* Part A, *supra*.

I, moreover, retain the ability to set aside releases subsequently if I later find they are not voluntary or knowing. *E.g.*, *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 358 (6th Cir. 2004); *accord Woods v. Rhodes*, 994 F.2d 494, 502 (8th Cir. 1993); *see also Murton*, *supra*, 2008 WL 5725628, *5; *cf. Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995).

I further believe the proper time for any such inquiry is *after* class certification, as invalidation of settlements is a drastic step that I do not intend to take lightly.[8] *Cf. Rubery*, *supra*, 514 F. Supp. 2d at 435 ("[T]he Letter Notice's inaccuracies can be remedied by the issuance of a corrective notice in the even class certification is granted. Thereafter, the Court will make adjustments to the docket as appropriate, to strike the consent forms of any putative plaintiffs who are ultimately discovered not to be properly included of the class.").

Plaintiff has failed to establish a "clear record" meriting his requested relief on this point, especially given the onerous nature of setting aside settlements previously obtained. *Gulf Oil*, *supra*,

---

[8] Such an approach might not be appropriate were the number of releases obtained capable of frustrating the numerousity requirement of class actions. This does not appear to be such a case, as plaintiff states that "[d]efendant sold Vetsulin to *millions* of consumers[.]" [Doc. 20, at 7 ¶ 40 (emphasis added)]. The number of releases obtained thus far, meanwhile, do not exceed two hundred. [Doc. 25-2, at 2-6]. I nonetheless leave it to plaintiff to contest my timing on this issue if he so desires.

452 U.S. at 101; *Williams*, 658 F.2d at 436. This is especially so in light of defendant's significant

rights relevant to this issue. *Kleiner*, *supra*, 751 F.2d at 1205-06.

I thus deny, without prejudice, plaintiff's motion to rescind any settlements defendant has

obtained so far.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff's motion [Doc. 6] be, and the same hereby is, granted in part and

denied in part, without prejudice; and defendant shall:

> 1) Notify those individuals from whom it has already procured Vetsulin settlement
> agreements/releases since the filing of this lawsuit – December 18, 2009 – that: a)
> this putative class action is currently pending by a Vetsulin customer whose pet has
> suffered injuries or death from said product; and b) the individuals may wish to
> consult with an attorney regarding their settlement agreement/release;

> 2) Notify any individual from whom it seeks a Vetsulin settlement agreement/release
> after issuance of this Order that: a) this putative class action is currently pending by
> a Vetsulin customer whose pet has suffered injuries or death from said product; b)
> signing the settlement agreement/release will prevent the individual from later
> joining this action if the class is certified; c) if no class is certified, defendant will so
> inform the customer, who will have thirty days in which to accept or reject
> defendant's settlement offer; and d) the individual may wish to consult with an
> attorney before signing the settlement agreement/release; and

> 3) Include with any such notice the names and contact information of plaintiff's
> counsel for this suit.

So ordered.

s/James G. Carr<br>U.S. District Judge

16